### JENKINS v. HAMMOND STAGE LINES et al.

### No. 1035.

Court of Appeal of Louisiana. First Circuit.

June 30, 1932.

Leon Ford, Jr., of Hammond, for appellant.

Burns & Pierson, of Ponchatoula, for appellee.

MOUTON, J.

The Automobile Underwriters' Insurance Company having been eliminated from this suit, the issues presented for decision must be restricted to the contentions between Edward Jenkins, plaintiff, and the Hammond Stage Lines, defendant.

Jenkins was driving his truck eastward from Ponchatoula to Madisonville. Strahan was driving a bus for defendant company in the same direction, was in the rear of the truck, and ran into the back part of the truck.

Plaintiff brought this suit against defendant company for .$465, for damages to his truck, and for personal injuries suffered by him in the collision, and recovered judgment in the sum of $415, from which defendant company prosecutes this appeal.

The testimony of the plaintiff is that he saw the bus coming in the rear of his truck, that he was driving on his right side, that is, on the south side of the roadway going eastward towards Madisonville. He had a mirror in his truck, and is positive that he saw the bus coming in his rear. He says he intended to make the turn in the road to his left, but that he kept on his right side, gave no signal of his intention to go to his left to make the turn, and had not turned at all when the bus ran into his truck.

Strahan, who was operating the bus, testified in the case, and gives his version of the occurrence.

His testimony is that he blew his horn, that plaintiff went to his right, and that, if he had continued going in that direction, he would have safely passed to the left of the truck. He says that, when plaintiff pulled over to his right after he first blew his horn, he started to "go by," but that plaintiff then started to make the turn in the road, that he blew his horn again, and it was then that plaintiff cut to his left, thus leaving no room for him to pass and making the collision with the truck unavoidable.

Strahan says, when he first sounded his horn and plaintiff pulled to his right, that he did not give him enough room to pass, but that, when he attempted to "go by," plaintiff started to make the turn, that he blew a second time, and the collision occurred. In that statement of Strahan it clearly appears, however, that plaintiff heard the first blow of his horn, and in obedience to that warning went to his right, as it was incumbent for him to do. It seems incredible that, if plaintiff so acted, he would have started back to the left side of the road and then again would have been so reckless, after a second blow of the horn, to have cut into the pathway of the bus, as appears from Strahan's explanation of the occurrence.

Considerable testimony was taken in reference to skid marks, tracks of the cars, and the location of the bus and truck after the collision. The evidence in this respect is

rather contradictory and conflicting, and cannot be depended upon for a proper solution of the case.

Two eyewitnesses, Stickner and Vining, however, who claim to have seen the collision, testified in the case and gave their version of what occurred.

They say they were under a shed at about 150 yards from the roadside, and saw the bus and truck coming over the roadway. Their testimony is that there were a few trees, not close one to the other, with high branches, also a fence between them and the road, but which did not prevent them from having a clear view of the road. Their testimony is that the truck, when they first saw it, was traveling at about thirty miles an hour, and had slowed down to seven or eight miles by the time it approached the turn in the roadway. They say that the bus was going at about forty miles an hour, and had not slowed down to an appreciable extent when it ran into the truck. They are positive that the truck was on its right side, that is, on the south side going to Madisonville when the collision happened, and that the truck had not then made a turn to its left, as was testified to by Strahan. These two witnesses, the record shows, are not relatives of the plaintiff, and have no interest in the result of this litigation.

The district judge, in his reasons dictated in the record, refers favorably to the testimony of these two witnesses in concluding that plaintiff had established his case by a preponderance of the evidence. The judge gave credence to their testimony, and we fail to see why we should doubt the truthfulness of their evidence so as to warrant us to say that there is reversible error in the finding of fact below.

The court allowed damages for $415, $165 for damage to the truck, and $250 for personal injuries suffered by plaintiff.

The evidence supports the depreciation in the value of the truck to the amount of $165 allowed therefor.

■■ Plaintiff testifies that he was knocked unconscious by the collision, remained in that condition until he reached Madisonville, when he recovered consciousness and returned to his normal condition. Some of the other witnesses testify that he was apparently unconscious and spoke in a rambling way and seemed to have been temporarily irrational. This is contradicted by other witnesses who say plaintiff came out of the truck, walked immediately after the accident, and was not unconsciousness. The testimony is again conflicting on this branch of the case; but which was apparently resolved by the district judge against the contentions of the defendant. In addition to the claim of plaintiff that he was temporarily unconscious, his testimony is that he suffered considerably thereafter from the effect of his injuries; that he could not attend to his work, as he had previously done, and had to be replaced in his work.

That he was so affected is supported by the testimony of Mr. Lavigne in whose store plaintiff was carrying on the business in which he was engaged. Plaintiff testifies he is still suffering with his neck, from the injury.

The court allowed him $250 for personal injuries. In such cases much discretion must be allowed to the trial judge, Civ. Code, art. 1934, and appellate courts will not reduce the amount decreed, unless excessive.

Not finding that the evidence warrants a reduction in the amount decreed, the judgment appealed from is affirmed, with costs.